# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **GARY WAYNE BROOKS** | **CIVIL ACTION NO. 06-0742** |
| **VS.** | **SECTION P** |
| **BURL CAIN, WARDEN** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* (28 U.S.C. §2254) filed on or about May 1, 2006, by *pro se* petitioner Gary Wayne Brooks. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, Angola, where he is serving the life sentence imposed following his 2002 conviction for second degree murder in the Fourth Judicial District Court, Ouachita Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons, it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE ON THE MERITS** pursuant to the provisions of Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.

## STATEMENT OF THE CASE

On June 22, 2006, the undersigned directed petitioner to amend his petition to provide specific information needed to complete an initial review. [doc. 7] On the same date, the Clerk of Court received and filed various documents submitted by petitioner. [doc. 6] Thereafter, on July 20, 2006, petitioner submitted additional exhibits. [doc. 9] On July 25, 2006, the undersigned

1

again requested specific documents from the petitioner. [doc. 10] On August 24, 2006, petitioner submitted his response to the second order. [doc. 11] Petitioner has provided all of the documents needed complete the initial review of his claims. The petition and supporting documents establish the following relevant facts: Petitioner was convicted of second degree murder on February 6, 2002. [doc. 1-4, p. 7] On April 26, 2002, the mandatory sentence of life imprisonment without benefit of parole or suspension of sentence was imposed. [doc. 6, p. 56]

Petitioner appealed his conviction to the Second Circuit Court of Appeals and argued a single assignment of error – insufficient evidence of specific intent to kill or inflict great bodily harm. [doc. 6, pp. 51-59]   On March 5, 2003, his conviction was affirmed by the appeals court which found,

> In the case *sub judice*, Defendant made two statements to the police during the investigation admitting in both statements that he shot at the victim. Jenkins, Bursey and Ford testified that, while they were in the vehicle, they saw Defendant shoot the victim at close range. In addition, as previously discussed herein, Defendant did not prove by a preponderance of the evidence that Fuller provoked him. Viewed in a light most favorable to the prosecution, we find that the testimony and evidence were legally sufficient and would justify any rational jury's finding that Defendant had the specific intent to kill or inflict great bodily harm, without provocation, when he fired his weapon at Fuller at close range. Defendant's assignment of error is without merit.  *State of Louisiana v. Gary Wayne Brooks*, 36,855 (La. App. 2 Cir. 3/5/2003), 839 So.2d 1075, 1079.

Notice of Judgment was mailed to petitioner and his appeals counsel on the same date. [doc. 6, p. 2; doc. 11, pp. 22-23]

On or about March 24, 2003, petitioner filed a *pro se* writ application seeking further

2

direct review in the Louisiana Supreme Court. [doc. 6, pp. 3-12[1]] Petitioner again argued insufficiency of the evidence to establish specific intent.

While this writ application was still pending in the Louisiana Supreme Court, petitioner filed a "Motion to Vacate Conviction" in the Fourth Judicial District Court. In a judgment denying that motion dated November 18, 2003, the District Court determined that petitioner's attack on the indictment was without merit and that petitioner's right to complain about any defects were waived when he proceeded to trial without filing a motion to quash. [doc. 6, p. 42]

On November 7, 2003, the Supreme Court denied writs. *State of Louisiana v. Gary Wayne Brooks*, 2003-0974 (La. 11/7/2003), 857 So.2d 517. [See also Judgment, Supreme Court, doc. 9-2, p. 62]

Petitioner filed an Application for Post-Conviction Relief in the Fourth Judicial District Court on September 23, 2004. He argued a single claim for relief, ineffective assistance of counsel. [doc. 1-1, p. 5; doc. 6, pp. 35-41; pp. 44-50; pp. 13-19][2] Specifically, petitioner argued that his court-appointed trial attorney "... did not perform any investigation, file pre-trial motions, make any objections during trial, present a defense or defense theory nor did he confer with the defendant on any possible defensive strategies." [doc. 6, p. 14]

On December 29, 2004, the petition was denied by the trial court. In his "Ruling on Application for Post- Conviction Relief Filed September 23, 2004" the trial court stated, "The

---

[1] The certificate of service on the unsigned pleading submitted by the petitioner is dated March 24, 2003. For the purposes of this analysis, it will be presumed that this was the date that petitioner submitted his pleading to the prison authorities for filing, and thus, was the date of filing. See *Causey v. Cain*, 450 F.3d, 601, 2006 WL 1413490 (5th Cir. May 24, 2006) (the prisoner mailbox rule applies to filings in Louisiana state courts).

[2] The copies of the Applications for Post-Conviction Relief submitted by petitioner are inexplicably dated March 13, 2005. [doc. 6, pp. 40, 41, 49, 50] In the Application petitioner denied having filed any other applications for post-conviction relief. [*id.*, pp. 36, 45] However, as shown hereinafter, it is unlikely that these pleadings were filed in 2005. Further, the December 29, 2004 judgment denying the application specifically states that the application was filed on September 23, 2004. [doc. 11, p. 5] Therefore, for the purposes of this Report, it will be assumed that the pleadings were filed in September 2004.

3

Court finds that, considered on the merits, this Application is hereby denied." [doc. 11, p. 5]

On January 20, 2005, petitioner signed an Application for Supervisory Writs which was filed in the Second Circuit Court of Appeals on January 31, 2005. [doc. 6, pp. 20-33; doc. 9-2, p. 61; doc. 11, pp. 6-19] Petitioner again urged a single claim, ineffective assistance of counsel. [*id*., pp. 25-33]

On March 3, 2005, the Second Circuit Court of Appeals denied relief and noted, "The claims of ineffective assistance of counsel and of erroneous jury instructions[3] are conclusory and meritless. The trial court did not err in denying relief and the writ is denied." [See *State of Louisiana v. Gary Wayne Brooks*, No. 39909-KH (La. App. 2 Cir. 3/3/2005); doc. 9-1, p. 61.]

On some unspecified date petitioner apparently sought further review in Louisiana's Supreme Court. Petitioner has not provided a copy of this writ application. On March 17, 2006, that court denied writs. *State ex rel. Gary Brooks v. State of Louisiana,* 2005-1677 (La. 3/17/2006), 925 So.2d 532.[4]

Petitioner filed his federal *habeas corpus* petition on or about May 1, 2006. He argued two claims for relief: (1) insufficiency of evidence; and, (2) ineffective assistance of counsel. Petitioner claimed that the evidence was insufficient to establish that he was possessed of the requisite specific intent to kill or inflict great bodily harm. As to the second claim, petitioner contended that his attorney "...did not perform any investigation, file pre-trial motions, make any

---

[3] Petitioner alleged the following in support of his ineffective assistance of counsel claim, "Counsel also did not object to the jury charge given by the trial court which placed the burden on the prosecution to prove any lesser included offense." [doc. 6, p. 29]

[4] Petitioner contends that his writ application in the Second Circuit was assigned Docket Number 36,855-KA. [see doc. 1-4, p. 8] He is mistaken, 36-855-KA was the docket number assigned by the Second Circuit to his direct appeal. According to exhibits submitted by the petitioner, his writ application on collateral review was assigned docket number 39909-KH by the Second Circuit Court of Appeals. See doc. 9-1, p. 61. The Supreme Court judgment denying relief also references this docket number. Nevertheless, for the purposes of this Report, it will be assumed that petitioner timely filed his writ application and that he argued a claim for relief identical to the claims raised in the Fourth Judicial District Court and the Second Circuit Court of Appeals.

4

objections at trial, present a defense or defense theory nor did he confer with the defendant on any possible defense strategies." [doc. 1-4, p. 12]

## *Law and Analysis*

Petitioner apparently exhausted his federal *habeas corpus* claims by raising those claims in a procedurally correct manner in the Louisiana Supreme Court in the direct review and post-conviction processes. Further, it appears that petitioner's federal *habeas corpus* petition was filed within the limitations period provided by 28 U.S.C. §2244(d). Finally, it does not appear that any of petitioner's federal claims were dismissed as procedurally defaulted by the Louisiana courts. Nevertheless, petitioner's *habeas corpus* petition is ripe for dismissal on initial review.

### *1. Rule 4 Considerations*

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." (See also *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999), "The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.' 28 U.S.C. foll. § 2254 Rule 4 Advisory committee Notes.")

Based upon the court's review of the pleadings and exhibits, it is recommended that the application be summarily dismissed for the reasons that follow:

### *2. Standard of Review*

A *habeas* petitioner whose claims were adjudicated on the merits in state court is not

entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d).

Claim One (sufficiency of the evidence) was adjudicated on the merits on direct appeal. Claim Two (ineffective assistance of counsel) was adjudicated on the merits during petitioner's post-conviction litigation.

Since both claims were adjudicated on the merits, petitioner is not entitled to relief unless he can demonstrate that the state courts' adjudication of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The phrase "clearly established" refers to the <u>holdings</u>, as opposed to the *dicta*, of the United States Supreme Court as of the time of the state-court decision being scrutinized. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Thus, "clearly established Federal law" refers to the governing legal principle or principles set forth by holdings of the United States Supreme Court at the time of the state court's decision. See *id.*, at 405, 413, 120 S.Ct. 1495; *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

A state court's decision is "...contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor, supra*, at 405-406, 120 S.Ct. 1495; see also *Bell v. Cone, supra*, at 694, 122 S.Ct. 1843.

Additionally, with regard to the phrase "unreasonable application," federal *habeas* courts

may grant the writ only if the state court identified the correct governing legal principle but then <u>unreasonably</u> applied that principle to the facts of the case. *Id.*, at 413, 120 S.Ct. 1495. In other words, before relief may be granted, the *habeas* court must first conclude that the state court's application of federal law was more than merely incorrect or erroneous. *Id.*, at 410, 412, 120 S.Ct. 1495. The state court's application of clearly established law must have been <u>objectively unreasonable</u>. *Id.*, at 409, 120 S.Ct. 1495. ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal *habeas* court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S., at 411, 120 S.Ct. 1495. Instead, the application must be <u>objectively unreasonable</u>. *Id.*, at 409, 120 S.Ct. 1495; *Bell v. Cone, supra*, at 699, 122 S.Ct. 1843; *Woodford v. Visciotti*, 537 U.S. 19, 27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*).)

### *3. Claim One – Sufficiency of the Evidence*

Petitioner argued a single assignment of error on appeal – sufficiency of the evidence. More specifically, petitioner argued "There is no evidence that [petitioner] desired to kill or inflict great bodily harm on the victim and certainly no evidence that he was committing one of the enumerated felonies contained in the statute. There is certainly evidence of sudden passion or heat of blood sufficient to deprive the average person of sound reason. Further, the testimony of the State witnesses on pages 164 and 177, is that the defendant was smiling and that, after the gun was empty he continued to aim at the car and continue pulling the trigger, even after the victim had left the scene. This would further establish the sudden passion and loss of cool reflection required to reduce this offense to a charge of manslaughter." [doc. 9-2, pp. 34 -35, Appellant's Brief on Appeal]

7

The Second Circuit Court of Appeals rejected this argument and found

> Defendant argues that there is insufficient evidence that he possessed the specific intent to kill or inflict great bodily harm, as is required to convict him of second degree murder. Defendant argues that his own statement to the police is the only evidence that can be used to indicate what his state of mind was at the time of the shooting. He asserts that this statement is evidence that he acted in immediate, sudden passion or heat of blood caused by provocation sufficient to deprive the average person of sound reason. Based on this rationale, Defendant urges that the evidence in the instant case can only support a finding that he committed the lesser crime of manslaughter. We do not agree.
>
> The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Rosiere*, 488 So.2d 965 (La.1986). The principal criterion of a *Jackson v. Virginia* review is rationality. *State v. Mussall*, 523 So.2d 1305 (La.1988). Due process demands that a criminal conviction cannot constitutionally stand if it is based on a record from which no rational trier of fact could find guilt beyond a reasonable doubt. *Id.*
>
> In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all of the evidence, and the actual trier of fact is presumed to have acted rationally until it appears otherwise. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. *Mussall, supra. State of Louisiana v. Gary Wayne Brooks*, 36,855 (La. App. 2 Cir. 3/5/2003), 839 So.2d 1075, 1077-78.

The last State Court to address the merits of petitioner's sufficiency of the evidence claim relied upon the rule enunciated by the United States Supreme Court in *Jackson v. Virginia*.

In applying the principals enunciated in *Jackson* to the facts of the case, the Second Circuit concluded

> Defendant argues that, when he shot Fuller, he acted in immediate, sudden passion or heat of blood because Fuller provoked him. He insists that his statements to the police are evidence that he was provoked and that this evidence supports a finding that he committed the lesser crime of manslaughter rather than

8

second degree murder. La. R.S. 14:31 defines manslaughter as follows:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed.

"Sudden passion" and "heat of blood" have been found not to be separate elements of the offense, but are mitigating factors that may show less culpability than when a homicide is committed without them. *State v. Lombard*, 486 So.2d 106 (La.1986). Provocation is a question of fact to be determined by the trier of fact. In order to be entitled to the lesser verdict of manslaughter, a defendant is required to prove mitigatory factors by a preponderance of the evidence. *State v. Mackens*, 35,350 (La.App.2d Cir.12/28/01) 803 So.2d 454; *State v. Lombard, supra.*

<u>Fuller [the victim] was unarmed when he was shot and killed</u> by Defendant. Defendant claims that he was provoked when the victim told him to leave his wife alone. Whether the victim, however, said anything at all to Defendant is in doubt. The only evidence to support that the victim said anything to the Defendant was Defendant's own statement to police investigators. <u>Jenkins, Bursey and Ford, all of whom witnessed the shooting, each denied that the victim said anything at all to Defendant. These same witnesses testified that none of the vehicle occupants engaged in any type of confrontation or heated argument with Defendant prior to the shooting. Confronted with this inconsistency, the jury was free to draw its own conclusion and disregard Defendant's statements as evidence of any mitigation of Defendant's conduct.</u>

<u>Even if the jury determined that the victim told Defendant to leave his wife alone, it could reasonably conclude that the victim's actions were not sufficient to mitigate Defendant's action from second degree murder to manslaughter. Provocative acts held to rise to the level of mitigating conduct have involved physical threats or actions on the part of the victim. See *State v. Lombard, supra*, and *State v. Ruff*, 504 So.2d 72 (La.App. 2d Cir.1987), *writs denied*, 508 So.2d 64 and 65 (La.1987). Moreover, our courts have not derogated from the principle that "mere words or gestures, however offensive or insulting, will not reduce homicide from murder to manslaughter." *State v. Massey*, 535 So.2d 1135 (La.App. 2d Cir.1988); *State v. Conerly*, 48 La. Ann. 1561, 21 So. 192 (La.1896).</u> Considering the totality of the record before us, a rational trier of fact could have concluded that Defendant did not establish the mitigating factors for manslaughter, reasonableness of provocation and heat of blood, by a preponderance of the evidence.

*   *   *

La. R.S. 14:30.1 defines second degree murder as follows: The killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.

Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. *State v. Graham*, 420 So.2d 1126 (La.1982); *State v. Fuller*, 414 So.2d 306 (La.1982); *State v. Doby*, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989). Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. La. R.S. 14:10(1); *State v. Lindsey*, 543 So.2d 886 (La.1989), *cert. denied*, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); *State v. McCray*, 621 So.2d 94 (La.App. 2d Cir.1993). <u>Pointing a gun at the victim and firing the gun has been ruled sufficient evidence to infer specific intent to kill or do great bodily harm in *State v. Procell*, 365 So.2d 484 (La.1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979). The law is that the discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. *State v. Maxey*, 527 So.2d 551 (La.App. 3d Cir.1988), *writ denied*, 541 So.2d 868 (La.1989). In the case *sub judice*, Defendant made two statements to the police during the investigation admitting in both statements that he shot at the victim. Jenkins, Bursey and Ford testified that, while they were in the vehicle, they saw Defendant shoot the victim at close range. In addition, as previously discussed herein, Defendant did not prove by a preponderance of the evidence that Fuller provoked him. Viewed in a light most favorable to the prosecution, we find that the testimony and evidence were legally sufficient and would justify any rational jury's finding that Defendant had the specific intent to kill or inflict great bodily harm, without provocation, when he fired his weapon at Fuller at close range. Defendant's assignment of error is without merit.</u> *State of Louisiana v. Gary Wayne Brooks*, 36,855 (La. App. 2 Cir. 3/5/2003), 839 So.2d 1075, 1078-79 (emphasis supplied).

These findings of fact are supported by the exhibits submitted by petitioner in support of his claims. [See Trial Transcripts, doc. 9-1, pp. 3-62; doc. 9-2, pp. 1-21] For example, Robbie Nell Jenkins, an eyewitness to the shooting in question identified defendant as the assailant of Melvin Fuller. [doc. 9-1, p. 3] She testified that the petitioner was at the rear of the vehicle but he eventually positioned himself near the driver's side window of the car she occupied, pointed his gun at the victim, then started shooting at point blank range [*id*., p. 9]. She testified that he continued shooting until his gun apparently ran out of ammunition. [*id*., p. 10] She likewise

10

testified that the victim was unarmed, [*id.*] and that the petitioner was smiling as he shot his victim. [*id.*, p. 11]

Sheila Ford testified that petitioner shot the victim. [*id.*, p. 18] She also testified that the victim was unarmed. [*id.*, p. 21] She testified that at some point, the victim "... was messing with his radio, the CD player. And after he closed the door, we heard a bump a the back of the car. We turned around because we thought [petitioner] had hit the car. And then you could hear a shot from the driver's side of the car ... I saw the fire coming from the gun. [*id.*, pp. 22-23] She also testified that petitioner fired six or seven rounds. [*id.*, p. 23] Finally, she testified that the petitioner's gun was pointed at the victim. [*id.*] She also testified that petitioner was smiling as he shot the victim. [*id.*, p. 24]

Linda Bursey, petitioner's ex-wife also described the shooting. [*id.*, pp. 35-48] She testified that there was no argument between petitioner and the victim prior to the shooting. [*id.*, p. 38] She also testified that petitioner discharged a number of rounds at close range in the direction of his victim. [*id.*, pp. 39-40]

All three witnesses testified that following the shooting, petitioner fled the scene. [*id.*, pp. 11; 24; 41]

Detective William Tarver of the Monroe Police Department testified that in the course of his investigation, he interrogated the petitioner. According to Tarver, petitioner "... stated that he started around the back of the vehicle. The car started to drive off. As they were driving off, he said [he] then pulled his pistol out of his pocket, fired one round at the car. The car stopped. He said he walked up to the drivers side window. He said he was – basically had lost his cool. He fired two more rounds into the window at the driver. And then fled the scene." [*id.*, p. 4]

The Second Circuit's findings of fact are clearly supported by the trial testimony.

Further, there can be no doubt but that the Second Circuit applied the appropriate legal standard in reviewing petitioner's sufficiency of evidence claim on appeal. The undersigned, having examined the entire record submitted by the petitioner in support of his claim, including the transcripts of the trial testimony of the eyewitnesses and investigating officers, must likewise conclude that (a) petitioner's sufficiency of the evidence claim was adjudicated on the merits in the Louisiana courts; (b) the adjudications did not result in decisions which were contrary to or involved unreasonable applications of clearly established Federal law; and (c) the adjudications did not result in decisions that were based on unreasonable determinations of the facts.

In short, petitioner has not shown that the sufficiency of the evidence findings of the Louisiana court was the result of objectively unreasonable fact-finding or an objectively unreasonable application of the *Jackson v. Virginia* standard. Since it plainly appears from the face of the petition and exhibits that the petitioner is not entitled to relief summary dismissal is recommended.

*4. Ineffective Assistance of Counsel*

Petitioner claims that his trial counsel rendered ineffective assistance. He raised this identical claim in his Application for Post-Conviction Relief in the district court, the court of appeals, and apparently in the Supreme Court. More specifically, petitioner contends that his court-appointed trial attorney "...did not perform any investigation, file pre-trial motions, make any objections at trial, present a defense or defense theory nor did he confer with the defendant on any possible defense strategies." [doc. 1-4, p. 12]

This claim was presented in petitioner's application for post-conviction relief. In his "Ruling on Application for Post- Conviction Relief Filed September 23, 2004" the trial court rejected this claim and stated, "The Court finds that, considered <u>on the merits</u>, this Application is

12

hereby denied." [doc. 11, p. 5] The Second Circuit Court of Appeals also rejected the claim and noted, "The claims of <u>ineffective assistance of counsel</u> and of erroneous jury instructions are <u>conclusory</u> and <u>meritless</u>. The trial court did not err in denying relief and the writ is denied." [See *State of Louisiana v. Gary Wayne Brooks*, No. 39909-KH (La. App. 2 Cir. 3/3/2005); doc. 9-1, p. 61.]

Clearly then, petitioner's second claim for relief was also denied on the merits. Of course, neither the district court nor the court of appeals explicitly articulated the legal basis of their respective conclusions. Nevertheless, the clearly established test for determining ineffective assistance of counsel is the test articulated by the United States Supreme Court in the matter of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The "two-pronged test" set forth in *Strickland* has long been "clearly established federal law" [see *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002); *Pippin v. Dretke*, 434 F.3d 782 (5th Cir. 2005)] and, in order for a habeas petitioner to prevail on an ineffective assistance of counsel claim he must demonstrate the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

In other words, counsel's deficient performance is prejudicial only if it is established that <u>but for counsel's errors, there is a reasonable probability that the final result would have been different</u> and confidence in the reliability of the verdict has been undermined. See *Leal v. Dretke*, 428 F.3d

543, 548 (5th Cir.2005), (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir.1998))(emphasis supplied).

Petitioner's state post-conviction claim of ineffective assistance of counsel was dismissed because petitioner offered nothing more than conclusory allegations in support of his claim. Petitioner continues to argue these identical "conclusory" allegations in this court in an attempt to establish the deficient performance of his trial attorney. Petitioner has not established deficient performance, nor has he established that the findings of the state courts were unreasonable.

Nevertheless, even if it is assumed that petitioner's conclusory allegations establish deficient performance, petitioner still cannot prevail because his claims simply do not support a finding of prejudice.

As shown in the discussion of petitioner's sufficiency of evidence claim, the record submitted by the petitioner establishes <u>overwhelming</u> evidence of petitioner's guilt.[5] The Fifth Circuit has held that overwhelming evidence of a defendant's guilt supports the conclusion that he suffered no prejudice as a result of his trial counsel's alleged deficient performance. See, e.g., *United States v. Royal*, 972 F.2d 643, 651 (5th Cir.1992); *United States v. Oakley*, 827 F.2d 1023, 1026 (5th Cir.1987) (*per curiam*). Because of the overwhelming evidence against

---

[5] Even if petitioner had not provided the trial transcripts of the eyewitness testimony and the testimony concerning his inculpatory statements, petitioner's own Statement of the Case provides ample evidence of his guilt. In the Memorandum in Support of his petition, petitioner claimed – "On May 29, 1999, petitioner attended a dance a the American Legion Hall in Monroe, Louisiana. While there he discovered that his wife, Linda Bursey, had also attended in the company of the victim, Melvin Fuller, Robbie Nell Jenkins and Sheila Ford. When the dance was over, Bursey and the rest of her friends got into a car to leave. <u>Petitioner approached the car</u> and opened the rear passenger door where Ms. Ford was sitting and tried to talk to his wife who was in the back seat on the driver's side. <u>Ms. Bursey testified that she asked the petitioner not to start any trouble and she would talk to him later. Ms. Ford told petitioner to shut the door because she had to go to work the next day. Petitioner shut the door and walked to the back of the vehicle and fired a shot at the trunk area of the vehicle. He then walked to the front driver's side and fired shots into the vehicle. One shot hit Fuller in the chest before he jumped out of the car. The victim ran into the American Legion Hall where he died as a result of his injury</u>. Petitioner was later arrested at his mother's home." [doc. 1-4, p. 8]

14

petitioner, including the testimony of three eyewitnesses, and petitioner's confession, no reason exists for thinking that the jury would have acquitted him had his attorney performed an investigation, filed pre-trial motions, made any objections at trial, presented another defense or defense theory, or conferred with the defendant on any possible defense strategies.[6] In short, the state courts' conclusion that petitioner's ineffective assistance of counsel claim lacked merit was neither an unreasonable finding of fact nor an unreasonable application of law.

**ACCORDINGLY,**

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts since it plainly appears from the face of the petition and exhibits annexed to it that the petitioner is not entitled to relief.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See,*

---

[6] Petitioner has not alleged what (if any) exculpatory evidence would have been unearthed by counsel's pre-trial investigation; nor has he alleged what pre-trial motions counsel should have filed; nor has he alleged what objections should have been made at trial; nor what neglected defense strategies might have been appropriate.

15

*Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 1st day of November, 2006.

*/s/ Karen L. Hayes*
KAREN L. HAYES
U. S. MAGISTRATE JUDGE